UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCLY
PADUCAH DIVISION

**ANTHONY CAIN**   **PLAINTIFF**
*Aka Jeff Johnson*
v.   **CIVIL ACTION NO. 5:23-CV-P1-JHM**

**CALLOWAY COUNTY JAIL et al.**   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court are cross-motions for summary judgment filed by *pro se* Plaintiff Anthony Cain, *aka* Jeff Johnson, and Defendant Sheila Peek. The matters being ripe, the Court will grant Defendant Peek's motion for summary judgment and deny Plaintiff's as set forth below.

### I. PLAINTIFF'S MOTIONS (DN 88, 96, AND 100)

Before addressing the merits of Plaintiff's and Defendant Peek's cross-motions for summary judgment, the Court considers three motions (DNs 88, 96, and 100) filed by Plaintiff.

After Defendant Peek filed her motion for summary judgment, the Court ordered Plaintiff to file a response and instructed him on the requirements of Rule 56 of the Federal Rules of Civil Procedure (the summary-judgment rule) (DN 80).

Plaintiff filed three responses (DN 82, 89, and 101). He also filed two motions in support of his pretrial memorandum and motion for summary judgment against Defendant Peek (DNs 88 and 96).

DN 88, titled in part "Motion in Support of Plaintiff's Pretrial Memorandum and Summary Judgment Motion," is essentially another response except that it also requests the Court to "order all admissions admitted to and an immediate ruling on the admissions." DN 88, PageID #: 1102. The Court does not "rule" on responses to admissions but will consider the responses in its consideration of the motions to which they are attached in support.

DN 96 asks for an immediate ruling on summary judgment against Defendant Peek. It was filed before the 14-day time for Defendant Peek to file her reply and is, therefore, inappropriate.

Plaintiff also filed a motion (DN 100) asking that the Court attach to his pretrial memorandum and motion for summary judgment the supplemental complaint in another case, *Johnson v. Kimbro*, 5:23-cv-120, related to his having been diagnosed with neuropathy.[1] The Court will not attach a document from another case into this case, and, in any event, the issue of whether or not Plaintiff has neuropathy need not be resolved for the Court to rule on the cross-motions for summary judgment. Accordingly, the Court will deny these motions.

## II. BACKGROUND

Plaintiff is a pretrial detainee housed at Calloway County Jail (CCJ) since his transfer there on November 7, 2022, from the Kentucky State Reformatory (KSR). DN 1, PageID #: 4. The complaint, signed under penalty of perjury, alleged that Defendant Peek, a nurse at CCJ, was deliberately indifferent to Plaintiff's serious medical need (diabetes) by denying him his medically prescribed diabetic diet; his diabetes medication, including medication for pain caused by his diabetes; and his prescribed shoes, which he states he needs because of diabetic foot pain. *Id*. at PageID #: 4-6, 14. Plaintiff alleges that he has been sick, hypoglycemic, in extreme pain, and been refused "plantar fasciitis injections in his feet that [he] took for years for diabetic foot pain." *Id*. at PageID #: 6. Plaintiff also alleged that Defendant Peek denied him his "walker/rollator," causing him to fall multiple times, most recently in his cell on December 27, 2022. *Id*.

Among the attachments to the complaint are a grievance dated November 11, 2022, in which Plaintiff grieved being "forced to take prescription meds at . . . pill call by non-medical

---

[1] Plaintiff has filed multiple cases in this Court. Since his incarceration at CCJ as a pretrial detainee less than a year and a half ago, he has filed seven cases here. Prior to that, he filed at least fourteen cases related to his previous incarceration as a convicted inmate within the state prison system.

trained officers." DN 1-1 PageID #: 21. The response was, "You take medications prescribed by the nurse practitioner/doctor. No rights violated." *Id*. Defendant Peek added a note to the response: "Explained all deputies that disperse medications are trained by medical staff and medical group." *Id*.

Another grievance dated the same day stated that Plaintiff was being refused his medically prescribed diabetes diet and that he had not seen a "provider," just a nurse. *Id*. at PageID #: 22. Defendant Peek responded, "Diabetes – medications and diet discussed – along with DOC standards for diabetic trays." *Id*.

On initial review, the Court allowed Plaintiff's Fourteenth Amendment deliberate-indifference claims against Defendant Peek to continue in her individual capacity (DN 23).

### III. STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*,

477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105 at *3 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit Court of Appeals has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted).

**IV.**

**A. Plaintiff's motion for summary judgment against Defendant Peek**

Plaintiff argues that Defendant Peek "took" his diabetic diet and diabetic pain medication away when he arrived at CCJ. DN 68, PageID #: 720. He also argues that she "took" his prescribed walker/rollator and diabetic shoes even though his medical records "clearly state" that he cannot walk on concrete without them. *Id*. at PageID #: 722 (referencing another of his cases in this Court, *Johnson v. Aramark Corp.*, 3-21-cv-725). According to Plaintiff, Defendant Peek "continued to give me the diabetic medication 'Glipizide' at CC Jail then took me off the diabetic medication Glipizide for side effect in 2022[;] told me she would put me on another diabetic medication but never did[,] acting with a culpable state of mind." *Id*. at PageID #: 725-26.

4

Plaintiff attaches his own "affidavits," "declarations," "daily logs," as well as printouts of general information about diabetes.[2]

In one of his affidavits, Plaintiff swears that he has "fallen multiple times in CCJ from the extreme pain in my feet and being denied my diabetic feet pain injections by Nurse Peek as well as my medically prescribed disability devices walker/rollator . . . and diabetic shoes." DN 68-1, PageID #: 758 (cleaned up).

In another affidavit, Plaintiff swears that "Nurse Peek took me off my diabetic meds and said she would put me on a different diabetic medication but never did and on arrival to [CCJ] she took, refused and denied my medically prescribed disability devices walker/rollator, . . . and diabetic shoes[.]" *Id*. at 760 (cleaned up).

### B. Defendant Peek's motion for summary judgment[3]

Defendant Peek argues that Plaintiff does not have a sufficiently serious medical need as required for a Fourteenth Amendment deliberate-indifference claim because his medical records since being housed at the CCJ show that his blood glucose has not been at diabetic levels. DN 70-1, PageID #: 787. She further argues that even if he had a sufficiently serious need, she did not act with reckless indifference towards him. *Id*. at PageID #: 788.

Among the attachments to Defendant Peek's summary-judgment motion is her affidavit, which establishes that she is a Licensed Practical Nurse, who must "follow my superiors' and

---

[2] These printouts were also produced by Plaintiff in a prior case he brought in this Court. *See Johnson v. Aramark Corr. Servs.*, LLC, No. 3:21-CV-P725-JHM, 2024 WL 313643, at *6 (W.D. Ky. Jan. 26, 2024). As the Court stated in that case, "These attachments are unauthenticated hearsay that cannot be relied upon to defeat summary judgment because Plaintiff has not identified an expert witness who would or could establish these documents' reliability and relevance as evidence." *Johnson*, 2024 WL 313643, at *6 (citations omitted).

[3] Defendant Peek's response to Plaintiff's motion for summary judgment is her summary-judgment motion. *See* DN 72.

physicians' order concerning medication administration and patient care." DN 70-2, PageID #: 792, 795. Defendant Peek also avers in pertinent part:

> 6. On November 7, 2022, I assessed Mr. Johnson upon his booking at CCJ, completing a history and physical. Mr. Johnson did not arrive at the jail with assistive devices or diabetic shoes. . . .
>
> 7. On November 7, 2022, Mr. Johnson refused his anti-diabetic medication, glipizide, but agreed to regular blood sugar checks. As a result of Mr. Johnson's refusal, APRN Christy Wortham ordered Mr. Johnson's blood sugar to be monitored. She did not order diabetic meals. . . .
>
> 9. As a Licensed Practical Nurse, it is outside the scope of my practice to prescribe or order diabetic snacks or meals. However, I relayed Mr. Johnson's request to APRN Wortham, who ordered twice daily blood sugar checks for Mr. Johnson for ten days. . . .
>
> 15. On July 14, 2023, I met with Mr. Johnson in response to his complaints of foot and back pain. Plaintiff requested to be prescribed gabapentin for neuropathy and fibromyalgia. To my knowledge, Mr. Johnson has not been diagnosed with either neuropathy or fibromyalgia. . . .
>
> 20. To my knowledge, Mr. Johnson never requested an assistive device or diabetic shoes.
>
> 21. However, even if Mr. Johnson requested an assistive device and/or diabetic shoes, it is outside the scope of my practice as a Licensed Practical Nurse, to prescribe or order either item. Such items would have to be ordered by APRN Wortham and approved by [CCJ] Jailer Ken Claud.
>
> 22. As a Licensed Practical Nurse, it is outside the scope of my practice to diagnose medical conditions.
>
> 23. As a Licensed Practical Nurse, it is outside the scope of my practice to prescribe medication or durable medical equipment. . . .
>
> 26. In my care of Mr. Johnson, I responded in accordance with my education, training, and experience to all serious medical needs that I observed or was otherwise made aware of. I met the standard of care at all times in my treatment of Mr. Johnson.
>
> 27. In my care of Mr. Johnson, I did not act deliberately indifference, recklessly, or with any intent to cause him harm.

DN 70-1, PageID #: 792-95.

6

Defendant Peek also attaches medical records, including numerous refusal-of-treatment forms signed by Plaintiff for both blood sugar checks and for prescribed medication. DN 70-5, 70-11, 70-12, 70-13, and 70-21. She also attaches the following:

- Plaintiff's CCJ medical history and physical form dated November 7, 2022, in which he reported being a Type II diabetic and taking glipizide, but also indicated that he "refuses medication for diabetes at this time." DN 70-3, PageID #: 797-98. On the same day, Plaintiff signed a refusal of treatment release form as to glipizide but agreed to blood monitoring "x3 days." DN 70-5, PageID #: 801.

- A medical note of a November 15, 2022, visit which took place after Plaintiff complained in a grievance that he was not being given a diabetic meal tray. DN 70-8, PageID #: 813. It states that Defendant Peek discussed with him his refusal to take diabetic medication or to treat with insulin; that Plaintiff demanded a diabetic snack at night, a 2200 calorie diabetic diet, and Ozempic to treat his diabetes; and that he did not want to take glipizide because he had issues with it. *Id*.

- A daily blood sugar log from November 7-10, and November 17-25, 2022. DN 70-9, PageID #: 815, 816.

- A blood sugar log from November 11, 2022, with a note dated November 17 that Defendant Peek spoke with APRN Wortham regarding Plaintiff's "request for Ozempic – Per Wortham Ozempic denied" – but that blood sugar checks were to continue. DN 70-6, PageID #: 814.

- A laboratory report of Plaintiff's blood collected on November 22, 2022, showing that

- Plaintiff's AIC[4] was 4. DN 70-10, PageID #: 817. The report explained that an A1C value higher than 6.5 is consistent with diabetes. *Id*.

- A laboratory report of Plaintiff's blood collected on May 16, 2023, indicating that Plaintiff's blood glucose level was 113 and "High" but that it was a random draw and "dependent upon time and content of last meal." DN 70-14, PageID #: 821. A medical note from May 22 states that Defendant Peek explained to him that his glucose was high "due to him eating before blood draw." DN 70-15, PageID #: 822.

- A medical note of a visit on June 8, 2023, for complaints of right hip pain and what he claimed was a cell phone implanted in his wrist. DN 70-6, PageID #: 805. It noted that he ambulated without difficulty. *Id*. Plaintiff was "encouraged to restart his Haldol as ordered by mental health at state facility." *Id*.

- A June 29, 2023, visit for back pain noted that his gait was steady; that he ambulated, sat, and stood without difficulty; and that he stated that he had fallen several times but had not reported it to staff. *Id*. at PageID #: 808.

- Medical notes from May 15, June 12, 16, 22, and 26, and July 3 and 11, 2023, of visits for complaints of back pain. In many, Defendant Peek noted that Plaintiff ambulated without difficulty, and in none did she note any difficulty. *Id*. at PageID #: 806-08, 811, 823.

- Blood sugar logs from July 11-25, 2023, DN 70-17, PageID #: 825, and from July 26, 2023, to September 11, 2023, DN 70-19, PageID #: 827-829, showing that Plaintiff refused to have his blood sugar checked on multiple occasions.

---

[4] According to the Centers for Disease Control and Prevention, an A1C blood test measures average blood sugar levels over the three months prior to taking the test and is commonly used to diagnose prediabetes and diabetes. www.cdc.gov.

- On July 14, 2023, Plaintiff was seen by Defendant Peek for feet and back pain. DN 70-18, PageID #: 826. She recorded that he suggested "Neurontin for neuropathy and fibromyalgia – but has not been formally diagnosed with either of these issues. Explained Gabapentin is not prescribed by our practitioner and explained why. I suggested we ask APRN about Elavil for pain – inmate declines Elavil because it is a 'psych med.'" *Id*.

- An August 24, 2023, medical note that Plaintiff's gait was steady and that he ambulated without difficulty. DN 70-6, PageID #: 811.

- A medical note from Defendant Peek dated September 28, 2023, that Plaintiff's gait was steady and that he showed no visible difficulty in sitting or standing. DN 70-7, PageID #: 812. Her notes record that she "[e]xplained I had no knowledge of his having diabetic shoes in his property – he would need to speak with Ken Claud. I also have no knowledge of a walker being brought in. – he will need to speak with jail staff." *Id*.

**C. Plaintiff's responses to Defendant Peek's summary-judgment motion[5]**

Plaintiff's response (DN 88) argues that he spoke with Defendant Peek about his medically prescribed disability devices at intake on November 7, 2022 "but she refused to let me have them and I in fact had just had new prescriptions for new diabetic shoes and walker rollator for foot pain before coming to CC Jail[.]" DN 88, PageID #: 1073. He swears under penalty of perjury that he came to CCJ "with my old diabetic shoes and they are in my property." *Id*. As support, he attaches a clinical order from October 6, 2022, while he was an inmate at KSR, pertaining to his diabetic shoes and rollator. DN 88-2, PageID #: 1116. That order indicates that both were "systematically discontinued due to patient release." *Id*.

---

[5] The Court considers Plaintiff's filings at DNs 82, 88, 89, and 101 and the exhibits attached thereto to the extent that they are not repetitive of one another. Plaintiff's sur-reply (DN 117) is entirely repetitive, and the Court does not consider it.

9

Plaintiff also argues that he came to CCJ with a prescription for glipizide. DN 88, PageID #: 1076. He attaches a Medication Verification Form dated November 7, 2022, indicating that he was last prescribed glipizide on October 18, 2022, *i.e.*, while still at KSR. DN 88-6, PageID #: 1132.

In DN 89, Plaintiff again argues that Defendant Peek admitted that he is diabetic and also argues that, even if his A1C is low, he is still at four times greater risk of stroke or heart attack. DN 89, PageID #: 1222. He argues that Defendant Peek tried to put him on insulin, but he refused. *Id*. at PageID #: 1223. He also contends that Defendant Peek admits in her summary-judgment motion that his sugar level was high. *Id*. at PageID #: 1241.

Plaintiff attaches additional "affidavits" and "daily logs." His other attachments include a medical note from KSR dated November 4, 2022, in which he complained of pain in his legs and feet, DN 89-2, PageID #: 1262; Defendant Peek's responses to his requests for admissions,[6] DN 89-3, PageID #: 1264; and his CCJ intake form, DN 89-5, PageID #: 1274-75.

### D. Defendant Peek's reply

In reply (DN 105), Defendant Peek points out that Plaintiff offers no evidence to contradict her assertion that he was in a non-diabetic state while at CCJ. DN 105, PageID #: 1425. As to Plaintiff's claim that Defendant Peek denied him use of diabetic shoes and a walker, she notes that the KSR records attached to Plaintiff's response show that these orders were discontinued when Plaintiff was released from KSR. *Id*. at PageID #: 1426.

### E. Plaintiff's reply

To his reply (DN 101), Plaintiff attaches Defendant Peek's July 14, 2023, medical note (summarized above); a 2014 Murray-Calloway County Hospital History and Physical form; and a

---

[6] In her responses, Defendant Peek denied that Plaintiff is diabetic. DN 89-3, PageID #: 1264.

2014 summary of a visit to an orthopedist related to neuropathy pain and surgery for left carpal tunnel release.  DNs 101-103.  None of those documents identify Plaintiff as a diabetic or tie his neuropathy to diabetes.

## V. ANALYSIS

The Due Process Clause of the Fourteenth Amendment "forbids holding pretrial detainees in conditions that 'amount to punishment.'"  *Kingsley v. Hendrickson*, 576 U.S. 389, 405 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  Therefore, when a pretrial detainee asserts a claim related to medical treatment, the claim is analyzed under the Fourteenth Amendment.  *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566-67 (6th Cir. 2020) (citing *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018)).

The Fourteenth Amendment deliberate-indifference standard has both an objective and a subjective component.  *See Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023), *cert. denied sub nom. Lewis Cnty., KY v. Helphenstine*, No. 23-259, 2024 WL 218779 (U.S. Jan. 22, 2024).  The Sixth Circuit recently explained the Fourteenth Amendment standard as follows:

> The standard in this circuit to prove a deliberate-indifference claim brought under the Fourteenth Amendment by a pretrial detainee is clear.  To make out such a claim, a plaintiff must demonstrate (1) an objectively serious medical need; and (2) that the defendants, analyzed individually, acted (or failed to act) intentionally and either ignored the serious medical need or "recklessly failed to act reasonably to mitigate the risk the serious medical need posed." *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021)).  Stated differently, a pretrial detainee must have a serious medical need, and the defendant must act, whether through intentional action or omission, recklessly in response to the need and the risk it presented to the detainee. *Helphenstine []*, 60 F.4th [at] 314[.]

*Grote v. Kenton Cnty.*, 85 F.4th 397, 405 (6th Cir. 2023).

11

The Sixth Circuit found in *Mercer v. Athens Cnty.*, 72 F.4th 152 (6th Cir. 2023), that, after its decision in *Brawner*, to survive summary judgment on a deliberate-indifference claim, a pretrial detainee must "'present evidence from which a reasonable jury could find (1) that [he or] she had an objectively serious medical need; and (2) that [the defendant's] action (or lack of action) was intentional (not accidental) and [the defendant] either (a) acted intentionally to ignore [the detainee's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [the detainee.]'" *Id.* at 160-61 (quoting *Brawner*, 14 F.4th at 597).

### A. Objective component

Defendant Peek argues that Plaintiff's diabetes did not constitute a serious medical need during the pertinent time. As she notes in her reply, Plaintiff offers no evidence to contradict her assertion that he was in a non-diabetic state while at CCJ. DN 105, PageID #: 1425. Defendant Peek does not dispute that Plaintiff has been diagnosed in the past with diabetes, and the evidence in the record of this case suggests that Plaintiff has been diagnosed with diabetes in the past but that during the time pertinent to this case it was controlled.[7] Defendant Peek offered evidence that a few days after he entered CCJ, Plaintiff's AIC level was 4 and that an A1C level lower than 6.5 is not consistent with diabetes. DN 70-10; PageID #: 817.

Plaintiff points to May 16, 2023, blood draw in which his blood glucose level was 113 and "High." DN 70-14, PageID #: 821. However, according to that report, it was a random draw and "dependent upon time and content of last meal." *Id*.

The Court need not determine whether controlled diabetes is a serious medical need, however, because, as set forth below, the record clearly demonstrates that Defendant Peek did not

---

[7] *See also Cain v. Wellpath/CCS*, No. 3:21-CV-484-CRS, 2023 WL 8358011, at *4 (W.D. Ky. Dec. 1, 2023) ("It is undisputed that Cain was diagnosed with type II diabetes[.]").

12

intentionally act or fail to act and either ignored Plaintiff's serious medical need, or recklessly failed to act reasonably to mitigate the risk the serious medical need posed to Plaintiff. *See Mercer*, 72 F.4th at 161.

### B. Subjective component

*1. Diabetes medication and diet*

Plaintiff alleged in his complaint that Defendant Peek denied him his diabetes medication and diet but argues in his summary-judgment motion that Defendant Peek "continued to give me the diabetic medication 'Glipizide' at CC Jail then took me off the diabetic medication Glipizide for side effect in 2022[.]" DN 68, PageID #: 725-26. However, the evidence shows that Plaintiff refused his diabetes medication glipizide on the day he arrived at CCJ, resulting in APRN Wortham ordering that his blood sugar be monitored.[8]  *See* DN 70-2, PageID #: 793. Further, although it is outside Defendant Peek's scope of practice to order diabetic snacks/meals, she relayed his request to her superior, APRN Wortham. *See* DN 70-2, PageID #: 793, 795. APRN Wortham did not order diabetic meals for Plaintiff. *See* DN 70-2, PageID #: 793.

The complaint also alleged that Plaintiff was refused "plantar fasciitis injections in his feet that [he] took for years for diabetic foot pain." DN 1, PageID #: 6. However, he offers no evidence to show that plantar fasciitis is caused by diabetes or that it is an objectively serious medical need. He produced medical note from KSR dated November 4, 2022, in which he complained of pain in his legs and feet, DN 89-2, PageID #: 1262, but does not point to any reason why defendant Peek would be aware of his complaints of foot pain while at KSR.

---

[8] Plaintiff also argued that Defendant Peek tried to put him on insulin, but that argument is undercut by the November 15, 2022, medical note, which states only, "discussed with inmate his refusal to take diabetic meds or to treat with insulin," DN 70-8, PageID #: 813, and Defendant Peek's averment that she cannot prescribe medication.

Additionally, Plaintiff also alleged that he had been hypoglycemic, but he has offered no evidence to support that allegation.

Defendant Peek has carried her burden of showing that she neither acted intentionally to ignore a serious medical need or recklessly failed to act to mitigate the risk to Plaintiff. *See Mercer*, 72 F.4th at 161. The record evidence shows that she relayed Plaintiff's requests for a diabetic diet and for a different diabetes medication – Ozempic – to the APRN, who denied both. *See* DN 70-1, PageID #: 793; DN 70-6, PageID #: 814. The record also shows that Defendant Peek did not ignore Plaintiff's complaints of pain. She suggested asking the APRN for a prescription for Elavil for pain, but Plaintiff declined. DN 70-18, PageID #: 826.

"[H]ealth care providers [are not] deliberately indifferent when they reasonably follow a doctor's orders." *Vick v. Smith*, No. 2:15-CV-116-JRG-MCLC, 2015 WL 13837613, at *5 (E.D. Tenn. Dec. 14, 2015) (citing *Bauer v. Kramer*, 424 F. App'x 917, 919 (11th Cir. 2011) (finding that nurse was not deliberately indifferent when she carried out physician's orders by administering prescribed medication). Further, an LPN who conveys a plaintiff's requests to her superior is not deliberately indifferent. *See Bowles v. Bourbon Cnty., Ky.*, No. 21-5012, 2021 WL 3028128, at *8 (6th Cir. July 19, 2021) (where LPN responded to plaintiff's "sick call requests and conveyed his subjective concerns to [the] APRNs," LPN was not deliberately indifferent).

*2. Diabetic shoes and walker/rollator*

Plaintiff alleged that Defendant Peek denied him diabetic shoes and his walker/rollator, causing him to fall multiple times, and offers his affidavit averring that "on arrival to [CCJ] she took, refused and denied my medically prescribed disability devices walker/rollator, . . . and diabetic shoes[.]" DN 68-1, PageID #: 76 (cleaned up). Although Plaintiff alleged that he arrived at CCJ with diabetic shoes and a rollator, he also argues on summary judgment that his diabetic

14

shows were in his property bag and offers no reason why Defendant Peek would know that. Neither the CCJ intake form or medical history form filled out on the date Plaintiff arrived at CCJ document that Plaintiff arrived with diabetic shoes or a walker/rollator. *See* DN 89-5, PageID #: 1274-75. Further, the October 6, 2022, KSR clinical order provided by Plaintiff indicates that his diabetic shoes and rollator were "systematically discontinued due to patient release [from KSR]" DN 88-2, PageID #: 1116.

Plaintiff offers no evidence to show that Defendant Peek was aware that he had fallen because of his lack of shoes/rollator. In fact, the only evidence in the medical record was a June 29, 2023, visit in which he stated that he had not reported any falls to staff. DN 70-6, PageID #: 808.

Defendant Peek has produced medical records and her affidavit to show that she never observed Plaintiff having trouble ambulating. *See id.* at PageID #: 806-08, 811, 823 (medical records); DN 70-1, PageID #: 795 (affidavit). A medical note from September 2023, months after Plaintiff filed this lawsuit, documents that she explained to Plaintiff that she "had no knowledge of his having diabetic shoes in his property – he would need to speak with Ken Claud. I also have no knowledge of a walker being brought in. – he will need to speak with jail staff." DN 70-7, PageID #: 812. Defendant Peek avers that as far as she knows Plaintiff never requested an assistive device or diabetic shoes and that she would not have been able to authorize those items in any event. *See* DN 70-2, PageID #: 795.

The Court can only "judge [Defendants'] actions based on the information that was available to them at the time." *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014); *see also Ford v. GEO Grp., Inc.*, No. CIV-13-1013-R, 2015 WL 5081172, at *12 (W.D. Okla. Aug. 27, 2015) ("[B]ecause Plaintiff declined to show or further describe his 'skin problem' to

15

LPN Wood, it cannot reasonably be inferred that LPN Wood knew of any serious risk to Plaintiff's health in connection with that skin problem such that LPN Wood could then be said to have disregarded such a risk by terminating the medical encounter."). The evidence of record demonstrates that Defendant Peek never observed any difficulties with Plaintiff's ambulation, that she was not aware that Plaintiff had previously had diabetic shoes or a walker/rollator until months after Plaintiff filed his complaint, and that once she was made aware, she instructed him on whom to speak to. The Court finds that Plaintiff has failed to produce "specific facts that reveal a genuine issue for trial" regarding his diabetes shoes or walker/rollator. *Laster*, 746 F.3d at 726.

## VI. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motions (DN 88, 96, and 100) are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (DN 68) is **DENIED** and Defendant Peek's motion for summary judgment (DN 70) is **GRANTED**.

The Court will enter a separate Judgment dismissing this case.

Date: March 4, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Counsel of record
4414.009